**MARTSOLF, Appellee,**

v.

**OHIO DEPARTMENT OF HUMAN SERVICES, Appellant.**

[Cite as *Martsolf v. Ohio Dept. of Human Serv.* (1991), 74 Ohio App.3d 793.]

Court of Appeals of Ohio,
Franklin County.

No. 91AP–233.

Decided July 18, 1991.

*Abroms & Weisz* and *Debi Everson,* for appellee.

*Lee Fisher,* Attorney General, and *Leah Rebecca Fist,* for appellant.

REILLY, Judge.

This is an appeal from a judgment of the Franklin County Court of Common Pleas reversing the May 2, 1990 decision by the Ohio Department of Human Services ("ODHS"). That decision had adopted the recommendation of a hearing officer for ODHS that Karen Martsolf no longer had the right to an intermediate level of care for the mentally retarded ("ICF–MR/DD").

ODHS sets forth the following three assignments of error:

"I. The Ohio Department of Human Services has properly applied the law in its administrative appeal decision and the court of common pleas erred in reversing the decision.

"II. The Ohio Department of Human Services administrative appeal decision is supported by reliable, probative and substantial evidence and the court of common pleas finding to the contrary was in error.

"III. The appellant-appellee does not have ongoing medical needs which require an ICF–MR/DD level of care and the court of common pleas erred in failing to reach this second part of the analysis under O.A.C. 5101:3–3–07."

Pursuant to R.C. 119.12 and Ohio Adm.Code 5101:3–50–27(C), any party adversely affected by an order of the department may appeal to the Court of Common Pleas of Franklin County. The Ohio Supreme Court described the standard of review in appeals pursuant to R.C. 119.12 in *Univ. of Cincinnati v. Conrad* (1980), 63 Ohio St.2d 108, at 110, 17 O.O.3d 65, at 68, 407 N.E.2d 1265 at 1267.

"In *Andrews v. Bd. of Liquor Control* (1955), 164 Ohio St. 275 [58 O.O. 51, 131 N.E.2d 390], paragraph one of the syllabus, this court held that a Court of Common Pleas must, in an appeal pursuant to this section, appraise all the evidence 'as to credibility of witnesses, the probative character of the evidence

and the weight to be given it, and, if from such a consideration it finds that the * * * [administrative] order is not supported by reliable, probative, and substantial evidence and is not in accordance with law, the court is authorized to reverse, vacate, or modify the order * * *.' However, *Andrews* also pointed out that R.C. 119.12 does not contemplate a trial *de novo* in the Court of Common Pleas * * *."

The issue before ODHS was whether Martsolf remained qualified to receive an ICF–MR/DD level of care. Hence, the trial court was then presented with the question of whether the finding of ODHS was supported by reliable, probative and substantial evidence and was in accordance with the law.

The issue in this appeal is whether the trial court abused its discretion in finding that the ODHS order was not supported by reliable, probative and substantial evidence and was not in accordance with the law. *Hartzog v. Ohio State Univ.* (1985), 27 Ohio App.3d 214, 27 OBR 254, 500 N.E.2d 362.

The trial court determined that ODHS had applied the wrong standard in evaluating Martsolf. Consequently, when the trial court applied the correct standard, the court determined that the ODHS order was not supported by reliable, probative and substantial evidence.

Martsolf is a thirty-nine-year-old female who is diagnosed as having Down's Syndrome, tested at an IQ level of fifty-nine and suffers from hypothyroidism, irritable bowel, and apparently some impairment of hearing. At issue is whether Martsolf should remain under the supervision of the Dierker Facility, where she will receive a higher level of care than the protective level recommended by ODHS.

In Ohio, a resident review process helps to ensure that a patient's needs and a nursing home's facilities are compatible. See Ohio Adm.Code 5101:3-3-12 and 5101:3-3-126. The level of care needed by each resident is reviewed by a resident review team at least once each year. During these reviews, a level of care is assigned to each resident to ensure that the level of care is compatible with the certification of the long-term care facility in which the resident resides. Ohio Adm.Code 5101:3-3-126(B).

Martsolf had been deemed to require an ICF–MR/DD level of care and she was assigned to the Dierker Road facility. Ohio Adm.Code 5101:3-3-07 provides the following requirement for the ICF–MR/DD level of care:

"A resident is deemed to require ICF–MR/DD level of care when the resident has been identified as mentally retarded or developmentally disabled as defined below and when the resident has ongoing medical needs which do not result in a skilled level of care as defined in rule 5101:3-3-05 of the Administrative Code."

Division (A) provides as follows:

" 'Mental retardation' means significantly subaverage general intellectual functioning existing concurrently with deficiencies in adaptive behavior and manifested during the developmental period."

Thus, in considering an ICF–MR/DD level of care, ODHS sought to determine whether Martsolf had significantly subaverage general intellectual functioning existing concurrently with deficiencies in adaptive behavior, which were manifested during the developmental period, and whether she had ongoing medical needs which did not result in a skilled level of care, as defined in Ohio Adm.Code 5101:3–3–05.

"Adaptive behavior" is defined under division (B)(2)(c), as follows:

" * * * 'Adaptive behavior' is the effectiveness or degree with which the individual meets the standards of personal independence and social responsibility expected of his age and cultural group in each of the following areas:

"(i) Self-care (daily activities enabling a person to meet basic life needs for food, hygiene, and appearance);

"(ii) Understanding and use of language (communication involving verbal and nonverbal behavior enabling a person both to understand and to express ideas and information to others);

"(iii) Learning (general cognitive competence and ability to acquire new behaviors, perceptions, and information; ability to apply experiences to new situations);

"(iv) Mobility (ability to use fine and gross motor skills; ability to move one's person from one place to another with or without mechanical aids);

"(v) Self-direction (management and taking control of one's social and personal life; ability to make decisions affecting and protecting one's self-interest);

"(vi) Capacity for independent living (age-appropriate ability to live without extraordinary assistance)."

On appeal from the hearing officer's recommendation, ODHS found that, in order to be classified under ICF–MR/DD, Martsolf must have substantial functional limitations in two or more of the areas of adaptive behavior. Based upon that determination, Martsolf lost her classification as ICF–MR/DD and was reclassified as needing only a protective level of care. The reclassification represents a lesser degree of individualized care available for Martsolf.

This court finds that the trial court properly determined that ODHS applied the wrong standard in determining whether or not this resident should be classified as ICF–MR/DD. The requirement that a resident have substantial

functional limitations in two or more areas of adaptive behavior applies to a resident who is developmentally disabled and not to a resident who is mentally retarded. In order to be classified as mentally retarded under Ohio Adm.Code 5101:3–3–07(A), a resident must have deficiencies in adaptive behavior. It is not required that those deficiencies be substantial or that they be of a certain number.

ODHS's first and second assignments of error are not well taken and are overruled.

In the third assignment of error, ODHS maintains that the trial court erred in finding that Martsolf should be granted an ICF–MR/DD level of care because Martsolf has not alleged or documented the existence of medical needs which require nursing care. Pursuant to Ohio Adm.Code 5101:1–35–071, the burden of proof in a determination of a level of care rests upon the local agency to show, by a preponderance of the evidence, that its action or inaction was in accordance with ODHS rules. Hence, ODHS must establish that Martsolf's ongoing medical needs do not require a skilled level of care as defined in Ohio Adm.Code 5101:3–3–05.

The Dierker Road facility where Martsolf resides is classified as an intermediate care facility. That level of care is defined, in part, as follows:

"A patient is deemed to require intermediate care when the patient requires a planned program of health related services and supervision which exceeds the level of room and board. The existing physical or mental conditions of the patient require care and services in an ICF on a twenty-four-hour-a-day basis. A patient whose intelligence is significantly subaverage but whose functional level and limitations in major life activities are commensurate with those of a person of the same age and cultural group who does not have the capacity for independent living may properly be determined to need intermediate care. 'Intermediate nursing care' is a combination of a medically-oriented program of uncomplicated treatment plans requiring medical supervision with strong emphasis on physical activity, intellectual stimulation, and social motivation. The range of services provided to ICF patients is broad. Services include: assistance with or supervision of the activities of daily living; administration of medications; procedures employed in providing for the physical, emotional, and rehabilitation needs of the ill or incapacitated to prevent or delay disability and to restore or compensate for a lost or diminished function. The overall objective for all residents shall be the attainment or maintenance of the optimal physical, intellectual, social, or vocational functioning of which the individual is potentially capable." Ohio Adm.Code 5101:3–3–06.

The trial court applied the proper standard to the facts and determined that the ODHS order was not supported by reliable, probative and substantial

evidence. Whereupon, this court finds that the trial court did not abuse its discretion in finding that Martsolf was entitled to receive an ICF–MR/DD level of care. Therefore, ODHS's third assignment of error is not well taken and is overruled.

The assignments of error are overruled, and the judgment of the Franklin County Court of Common Pleas is affirmed.

*Judgment affirmed.*

PEGGY BRYANT and PETREE, JJ., concur.

ARCHER E. REILLY, J., retired, of the Tenth Appellate District, was assigned to active duty pursuant to Section 6(C), Article IV, Ohio Constitution.